## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF NEW YORK

******************************************

UNITED STATES OF AMERICA,

Docket No.:   26-CR-61

v.

FRANKLIN AMADEO TENECELA-AGUAIZA,
          Defendant.

******************************************

### BRIEF FOR THE APPELLEE UNITED STATES OF AMERICA

Dated: March 23, 2026

TODD BLANCHE
Deputy Attorney General

JOHN A. SARCONE III
First Assistant United States Attorney

By:      */s/ Douglas G. Collyer*
Douglas G. Collyer
Assistant United States Attorney

**TABLE OF CONTENTS**

I. STATEMENT OF THE ISSUES PRESENTED ................................................................ 6

II.  STATEMENT OF THE CASE .......................................................................................... 6

    A.  Introduction. ............................................................................................................. 6

    B.  Procedural History ................................................................................................... 6

III.  STATEMENT OF FACTS ............................................................................................... 7

    A.  Offense Conduct. ...................................................................................................... 7

    B.  The Trial. .................................................................................................................. 6

IV.  SUMMARY OF ARGUMENT ........................................................................................ 8

V.  ARGUMENT ..................................................................................................................... 8

POINT I: Because Section 1325(a)(2) Establishes a Continuing Offense, Venue Was Proper
in the Northern District of New York ...................................................................................... 8

    A.  Relevant Facts ........................................................................................................... 8

    B.  Standard of Review ................................................................................................... 9

    C.  Governing Law ........................................................................................................ 10

    D.  Discussion ............................................................................................................... 10

POINT II: The Trial Evidence Was Sufficient ...................................................................... 24

    A.  Governing Law and Standard of Review ................................................................ 24

    B.  Discussion ............................................................................................................... 25

VI.  CONCLUSION ............................................................................................................... 27

**Table of Authorities**

8 C.F.R. § 100.4 ................................................................................................ 17

8 U.S.C. § 1101 ................................................................................................ 24

8 U.S.C. § 1182 ........................................................................................... 16, 19

8 U.S.C. § 1225 .............................................................................................. 15-17

8 U.S.C. § 1325 ........................................................ 7, 8, 9, 10, 11, 12, 13, 26

8 U.S.C. § 1329 ................................................................................................ 20

18 U.S.C. § 3237 ......................................................................................... 10, 12

Fed. R. Crim. P. 58 ........................................................................................... 9

*Brown v. United States*,
    602 U.S. 101 (2024) ...................................................................................... 22

*Buenrostro-Mendez v. Bondi*,
    166 F.4th 494 (5th Cir. 2026) ....................................................................... 16

*Clark v. Martinez*,
    543 U.S. 371 (2005) ...................................................................................... 19

*Dorval v. Barr*,
    414 F. Supp. 3d 386 (W.D.N.Y. 2019) ......................................................... 23

*Jackson v. Virginia*,
    443 U.S. 307 (1979) ...................................................................................... 25

*Jones v. Hendrix*,
    599 U.S. 465 (2023) ...................................................................................... 17

*Niz-Chavez v. Garland*,
    593 U.S. 155 (2021) ...................................................................................... 14

*NLRB v. SW Gen., Inc.*,
    580 U.S. 288 (2017) ...................................................................................... 14

*Pugin v. Garland*,
    599 U.S. 600 (2023) ...................................................................................... 22

*Pulsifer v. United States*,
    601 U.S. 124–53 (2024) ................................................................................ 22

*Rosemond v. United States*,
    572 U.S. 65 (2014) ........................................................................................ 26

*Russello v. United States*,
    464 U.S. 16 (1983) ........................................................................................ 14

*Snyder v. United States*,
    603 U.S. 1 (2024) .......................................................................................... 14

*Southwest Airlines Co. v. Saxon*,
    596 U.S. 450 (2022) ...................................................................................... 11

*Toussie v. United States*,
    397 U.S. 112 (1970) ...................................................................................... 18

*Travis v. United States*,
    364 U.S. 631 (1961) ...................................................................................... 10

*United States v. Abelis*,
    146 F.3d 73 (2d Cir. 1998) ........................................................................... 25

*United States v. Atilla*,
    966 F.3d 118 (2d Cir. 2020) ......................................................................... 25

*United States v. Bailey*,
    444 U.S. 394 (1980) .................................................................. 11, 15, 18, 19

*United States v. Barker*,
    556 F.3d 682 (8th Cir. 2009) ........................................................................ 12

*United States v. Bozza*,

365 F.2d 206 (2d Cir. 1966) ............................................................................................ 10

*United States v. Busic*,
549 F.2d 252 (2d Cir. 1977) ........................................................................................... 10

*United States v. Brunot*,
8:25-po-111 (GLF) ......................................................................................................... 23

*United States v. Canal Barge Co.*,
631 F.3d 347 (6th Cir. 2011) .......................................................................................... 21

*United States v. Capers*,
20 F.4th 105 (2d Cir. 2021) ............................................................................................ 24

*United States v. Cavillo-Rojas*,
510 F. App'x 238 (4th Cir. 2013) ................................................................................... 22

*United States v. Chang-Rodriguez*,
2020 WL 3542302 (D.N.M. June 30, 2020) .................................................................. 24

*United States v. Coombs*,
37 U.S. (12 Pet.) 72 (1838) ............................................................................................ 20

*United States v. Corrales-Vazquez*,
931 F.3d 944 (9th Cir. 2019) ............................................................................. 11, 15, 23

*United States v. Cuadra Soto*,
2026 WL 123220 (D. Neb. Jan. 16, 2026) ............................................................... 12, 19

*United States v. Davis*,
588 U.S. 445 (2019) ....................................................................................................... 21

*United States v. Gambino-Ruiz*,
91 F.4th 981 (9th Cir. 2024) ........................................................................................... 16

*United States v. Gonzalez*,
110 F.3d 936 (2d Cir. 1997) ........................................................................................... 24

*United States v. Hansen*,
599 U.S. 762 (2023) ....................................................................................................... 14

*United States v. Jabar*,
19 F.4th 66 (2d Cir. 2021) .............................................................................................. 25

*United States v. Keller*,
912 F.2d 1058 (9th Cir. 1990)......................................................................................... 12

*United States v. Magassouba*,
619 F.3d 202 (2d Cir. 2010) ........................................................................................... 10

*United States v. McDermott*,
245 F.3d 133 (2d Cir. 2001) ........................................................................................... 25

*United States v. Montes-De Oco*,
820 F. App'x 247 (5th Cir. 2020) ................................................................................... 26

*United States v. Oca*,
2019 WL 3536823 (W.D. Tex. Aug. 2, 2019) ................................................. 13, 15, 24, 26

*United States v. Oscar*,
496 F.2d 492 (9th Cir. 1974) .......................................................................................... 11

*United States v. Panebianco*,
543 F.2d 447 (2d Cir. 1976) ........................................................................................... 10

*United States v. Persico*,
645 F.3d 85 (2d Cir. 2011) ............................................................................................. 25

*United States v. Pontz*,
132 F.4th 10 (1st Cir. 2025) ........................................................................................... 18

*United States v. Rasheed*
981 F.3d 187 (2d Cir. 2020) ........................................................................................... 12

*United States v. Reed*,
773 F.2d 477 (2d Cir. 1985) ........................................................................................... 13

4

*United States v. Reitmeyer*,
  356 F.3d 1313 (10th Cir. 2004) ............................................................................ 18
*United States v. Rodriguez-Moreno*,
  526 U.S. 275 (1999) ............................................................................................ 18
*United States v. Root*,
  585 F.3d 145 (3d Cir. 2009) ............................................................................... 11
*United States v. Sajous*,
  2025 WL 2097261 ............................................................................................... 24
*United States v. Svoboda*,
  347 F.3d 471 (2d Cir. 2003) ................................................................................. 9
*United States v. Tannenbaum*,
  934 F.2d 8 (2d Cir. 1991) ................................................................................... 18
*United States v. Tzolov*,
  642 F.3d 314 (2d Cir. 2011) ............................................................................... 25

## I. STATEMENT OF THE ISSUES PRESENTED

1.  Whether venue to prosecute a violation of 8 U.S.C. § 1325(a)(2) was proper in the Northern District of New York when the defendant-appellant illegally entered the United States in another district but illegally remained in the Northern District of New York without presenting himself for immigration inspection.

2.  Whether the evidence was sufficient to support a conviction for 8 U.S.C. § 1325(a)(2) when the defendant-appellant failed to present himself for immigration inspection.

## II. STATEMENT OF THE CASE

### A.  Introduction

Defendant-appellant Franklin Amadeo Tenecela-Aguaiza appeals his conviction for entry without inspection following a bench trial before a Magistrate Judge in the United States District Court for the Northern District of New York (Favro, M.J.).  Tenecela-Aguaiza argues that (i) venue for the offense in the Northern District of New York was improper; and (ii) the evidence was insufficient to establish his guilt.

### B.  Procedural History

On November 5, 2025, Tenecela-Aguaiza was charged in the Northern District of New York by complaint with entry without inspection, in violation of 8 U.S.C. § 1325(a)(2).  A:6-7.[1]

On November 14, 2025, Tenecela-Aguaiza filed a motion to dismiss the complaint.  Dkt. 12. The government filed its response in opposition on November 26, 2025, dkt. 15, and Tenecela-Aguaiza replied on December 2, 2025, dkt. 16. The magistrate judge heard oral argument during a motion hearing on December 4, 2025, and issued an order denying Tenecela-Aguaiza's motion to dismiss on December 10, 2025.  Dkt. 17.

---

[1] "A:" refers to the appendix Tenecela-Aguaiza filed.  "Dkt." refers to the ECF docket in this case.

On December 11, 2025, the government filed an information charging Tenecela-Aguaiza with a violation of 8 U.S.C. § 1325(a)(2). A:49. On February 12, 2026, the Magistrate Judge convicted Tenecela-Aguaiza of the sole count of the information after a one-day bench trial on stipulated facts.  A:62-79.  That same day, the Magistrate Judge sentenced Tenecela-Aguaiza principally to a total term of imprisonment of time served. A:84-85. On February 20, 2026, Tenecela-Aguaiza filed a timely notice of appeal.  A:88.

### III. STATEMENT OF FACTS[2]

#### A.  Offense Conduct

On November 1, 2025, a citizen reported a suspicious vehicle to the Ogdensburg Police Department. A:56.  Members of the Ogdensburg Police Department stopped the vehicle in St. Lawrence County. *Id.* At approximately 10:00 p.m., a United States Border Patrol Agent responded to the traffic stop and encountered Tenecela-Aguaiza. *Id.* During a brief interview, Tenecela-Aguaiza admitted he was an alien and citizen of Ecuador and that he did not have authorization to be present in the United States. *Id.* Ecuadorian citizens require a visa to enter the United States. *Id.* Tenecela-Aguaiza did not have any documentation allowing him to be lawfully present in the United States on November 1, 2025. *Id.*

Tenecela-Aguaiza was transported to the Ogdensburg Border Patrol station. *Id*. There, Tenecela-Aguiaza admitted he unlawfully entered the United States near El Paso, Texas in or around August 2021 and was not inspected or admitted by an immigration officer. *Id.*

Thereafter, Tenecela-Aguaiza did not have any contact with federal officials for any immigration-related purpose prior to his encounter with Border Patrol agents on November 1, 2025. *Id.*

---

[2] The facts stated in this section are taken from the Trial Stipulation.

At the Border Patrol station, a records check confirmed Tenecela-Aguaiza had no record of legal admission into the United States and there was no record that he had been previously inspected or examined by United States immigration authorities. *Id.*

**B.  The Trial**

Tenecela-Aguaiza's bench trial before Magistrate Judge Favro was conducted on February 12, 2026.  A:62-79.  The trial was conducted on stipulated facts, and no witnesses were called by either party.  *Id*. and A:56-60.

Through the stipulated facts, the government established: (i) Tenecela-Aguaiza was an alien; and (ii) Tenecela-Aguaiza had eluded examination and inspection of immigration officials since he illegally entered the United States in August 2021 until he was encountered by Border Patrol in the Northern District of New York on November 1, 2025. A:56-57.

At the conclusion, Judge Favro returned a verdict finding Tenecela-Aguaiza guilty of violating 8 U.S.C. § 1325(a)(2).  A:79.

## IV. SUMMARY OF ARGUMENT

Venue is proper in the Northern District of New York because a violation of section 1325(a)(2) continues while an alien eludes examination and inspection by immigration officers.

The evidence presented during the trial proved beyond a reasonable doubt that Tenecela-Aguaiza was an alien who had eluded examination and inspection of immigration officials since he illegally entered the United States in August 2021 until he was encountered by Border Patrol in the Northern District of New York on November 1, 2025.

## V. ARGUMENT

**POINT I:      Because Section 1325(a)(2) Establishes a Continuing Offense, Venue Was Proper in the Northern District of New York.**

**A.  Relevant Facts**

On November 14, 2025, Tenecela-Aguaiza filed a motion to dismiss the complaint arguing that venue was improper in the Northern District of New York because Tenecela-Aguaiza illegally entered the United States near El Paso, Texas.  Dkt. 12.

The government responded in opposition and asserted that venue for a violation of section 1325(a)(2) was proper in the Northern District of New York because such a violation was a continuing offense for venue purposes because the act of eluding examination or inspection by immigration authorities extends beyond the initial moment of evasion.  Dkt. 15.

The Magistrate Judge denied Tenecela-Aguaiza's motion to dismiss in its entirety after considering "whether or not 8 U.S.C. § 1325(a)(2) is a continuous act or a single act which occurs upon the illegal entry into the United States by an alien." Dkt. 17. The Magistrate Judge found that section 1325(a) can be violated in "three separate and distinct manners" and that "illegal entry" was a "separate fact (sic) from 'eluding examination and inspection by immigration officers.'" *Id.*

The Magistrate Judge held "the act of eluding examination or inspection by immigration officers occurs each and every day when a person who has entered the country illegally fails to submit to inspection or examination by immigration officials" and therefore, a violation of section 1325(a)(2) is "a continuous offense by virtue of an interpretation of the plain meaning and intent of the statute." *Id.*

### B.  Standard of Review

The district court's review of a magistrate judge's judgment of conviction or sentence is "the same as in an appeal to the court of appeals from a judgment entered by a district judge." Fed. R. Crim. P. 58(g)(2)(D).

Legal questions concerning venue are reviewed *de novo*. *See e.g.*, *United States v. Svoboda,* 347 F.3d 471, 482 (2d Cir. 2003). "Venue turns on whether any part of the crime was committed

within the district." *United States v. Panebianco*, 543 F.2d 447, 455 (2d Cir. 1976). "[A]lthough venue is grounded in the Sixth Amendment, it is not an element of the crime and the government need only establish venue by a preponderance of the evidence." *United States v. Magassouba,* 619 F.3d 202, 204 (2d Cir. 2010).

### C.  Governing Law

Under 18 U.S.C. § 3237(a), "any offense … begun in one district, may be … prosecuted in any district in which such offense was begun, continued or completed." Where Congress has "created a continuing offense, it is held, for venue purposes, to have been committed wherever the wrongdoer roamed." *Travis v. United States*, 364 U.S. 631, 634 (1961). The continuing offense statute applies to crimes that, by their nature, "involve[] a continuous course of conduct." *United States v. Busic*, 549 F.2d 252, 259 (2d Cir. 1977).  In contrast, the continuing offense statute does not apply where the essential nature of the crime involves a single act. *See United States v. Bozza*, 365 F.2d 206, 220 (2d Cir. 1966).

Title 8, United States Code, Section 1325(a) provides:

Any alien who (1) enters or attempts to enter the United States at any time or place other than as designated by immigration officers, or (2) eludes examination or inspection by immigration officers, or (3) attempts to enter or obtains entry to the United States by a willfully false or misleading representation or the willful concealment of a material fact, shall, for the first commission of any such offense, be fined under Title 18 or imprisoned not more than 6 months, or both, and, for a subsequent commission of any such offense, be fined under Title 18, or imprisoned not more than 2 years, or both.

8 U.S.C. § 1325(a).

### D.  Discussion

The Magistrate Judge properly found that section 1325(a)(2) sets forth a continuing offense for venue purposes. This understanding is supported by the text of the statute, its place within the

overall statutory scheme, and canons of interpretation. Accordingly, venue was proper in the Northern District of New York.

To determine whether section 1325(a)(2) describes a continuing offense, the Court "[a]s always" "begin[s] with the text." *Southwest Airlines Co. v. Saxon*, 596 U.S. 450, 457 (2022). Section 1325(a)(2)'s text says that "[a]ny alien who … eludes examination or inspection by immigration officers" is guilty of a crime. 8 U.S.C. § 1325(a). At the time of the provision's enactment in 1952, the word "elude" meant "[t]o avoid slyly or adroitly, as by artifice, stratagem, or dexterity; to evade; … [t]o escape the notice or perception of." *Websters New English Dictionary* 267 (6th ed. 1951) ("*Websters New*"). Thus, a person eludes authorities until they are caught, which suggests that the offense continues in the meantime. *See, e.g.*, *United States v. Bailey*, 444 U.S. 394, 399 (1980) (escaped prisoners "eluded the authorities for one month").

Case law buttresses this straightforward reading of the word "elude," which has long been understood to mean much the same as the word "escape." *See Websters New* 267; *see also Websters New International Dictionary* 713 (1st ed. 1930) (defining elude as "escape from in a covert manner").[3]  Indeed, in *United States v. Bailey*, the Supreme Court found it "clear beyond peradventure that escape from federal custody … is a continuing offense and that an escapee can be held liable for failure to return to custody as well as for his initial departure." 444 U.S. 394, 413 (1980); *see also United States v. Root*, 585 F.3d 145, 156 (3d Cir. 2009) ("Tax evasion is a

---

[3] The definition has not materially changed since. *See, e.g.*, *Websters New World College Dictionary* 455 (2d ed. 1970) (defining elude to mean "escape detection, notice, or understanding"); *Websters Third New International Dictionary* 738 (2002) (defining elude to mean, in part, "escape the notice or perception of"); 3 *Oxford English Dictionary First* 97 (defining elude to mean "escape by dexterity or stratagem" or "escape adroitly from"); *accord United States v. Corrales-Vazquez*, 931 F.3d 944, 949 (9th Cir. 2019) ("To elude, in other words, generally contemplates a risk of exposure to, and subsequent escape from, the object being eluded."); *United States v. Oscar*, 496 F.2d 492,494 (9th Cir. 1974) (defining elude in section 1325(a)(2) as meaning "to avoid or escape" (citation omitted)).

continuing offense . . . ." (citing 18 U.S.C. § 3237(a))); *United States v. Barker*, 556 F.3d 682, 689 (8th Cir. 2009) (same). Similarly, the act of eluding examination or inspection by immigration authorities extends beyond the initial moment of evasion. Linguistically, both words express an ongoing act.

Tenecela-Aguaiza argues that eluding examination or inspection is distinguishable from escaping from prison and instead, analogizes it to failing to report to prison. *See* Memorandum of Law on Appeal for Defendant-Appellant Franklin Amadeo Tenecela-Aguaiza ("Def. Mem.") at 18. But failing to report to prison is escaping. *See United States v. Keller,* 912 F.2d 1058, 1060 (9th Cir. 1990) (failure to report to Bureau of Prisons facility for self-surrender as directed made defendant "an escapee" "an instant later"). In *United States v. Rasheed*, upon which Tenecela-Aguaiza relies, the defendant was directed to report to a prison facility in the Western District of New York but failed to report and was later found in Pittsburgh, Pennsylvania. 981 F.3d 187, 191 (2d Cir. 2020). The Court in *Rasheed* simply held venue was proper in the Western District of New York, where the facility was located. It did not hold that venue would be improper in the Western District of Pennsylvania, where the defendant was found. *Id.* at 194-95.

Tenecela-Aguaiza also relies on *United States v. Cuadra Soto*, 2026 WL 123220, *5 (D. Neb. Jan. 16, 2026), where the magistrate court concluded that "nothing about the word 'elude' necessarily indicates section 1325(a)(2) is a continuing offense." But in the preceding sentence, the same court acknowledged that "[a] person may elude something once, at a specific place and moment in time (i.e., to escape by stratagem), or *continuously elude an ongoing obligation (i.e., to escape discovery or to remain undiscovered).*" *Id.* at *4 (emphasis added). Thus, the court acknowledged that "elude" refers *both* to a specific act at a specific moment in time *and* to a continuing act of avoiding an ongoing obligation. The court did not explain why the plain meaning

of "elude" does not therefore establish a continuing offense. If the plain meaning of "eludes" in section 1325(a)(2) encompasses both the initial act of avoiding inspection at the moment the alien crosses the border *and* the act of continuing to avoid inspection, then venue for a section 1325(a)(2) offense necessarily lies in both locations where such acts occur.  *See United States v. Reed*, 773 F.2d 477, 480 (2d Cir. 1985) (noting that when "the acts constituting the crime and the nature of the crime charged implicate more than one location, the [C]onstitution does not command a single exclusive venue").

Tenecela-Aguaiza's narrow reading of section 1325(a)(2) ignores how its language differs from its neighboring provisions. Sections 1325(a)(1) and (a)(3) explicitly refer to "entering" the United States, but section 1325(a)(2) does not. "Unlike § 1325(a)(2), § 1325(a)(1) and (3) both include the word 'enters,' demonstrating that Congress could have included the word 'enters' within § 1325(a)(2) if Congress so desired. Accordingly, this court declines to read § 1325(a)(2) as requiring entry." *United States v. Oca,* 2019 WL 3536823, at *4 (W.D. Tex. Aug. 2, 2019). The language of section 1325(a)(2) serves to expand the scope of the inspection offense beyond the point of entry and draws a clear distinction between "entering" and "eluding." The former only occurs at the border and the latter continues until apprehension or self-reporting.

Contrary to Tenecela-Aguaiza's claim, the broader statutory context of Title 8 likewise supports the government's interpretation of section 1325(a)(2). Tenecela-Aguaiza highlights that 1326(a) states a continuing offense by subjecting to criminal liability any alien "found in" the country after having been denied entry before. On this basis, he contends that the absence of the "found in" language in section 1325(a)(2) shows it is not a continuing offense. It is true that, "'[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in

13

the disparate inclusion or exclusion.'" *Russello v. United States*, 464 U.S. 16, 23 (1983) (*quoting United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir. 1972)). But "[t]he force of any negative implication … depends on context." *NLRB v. SW Gen., Inc.*, 580 U.S. 288, 302 (2017) (internal quotation marks and citation omitted). Here, "[s]tatutory history is an important part of this context," *United States v. Hansen*, 599 U.S. 762, 775 (2023), and it shows that the negative implication runs in the other direction. In the early twentieth century, aliens were to be deported if they entered "at any time or place other than as designated by immigration officials" or "enter[ed] without inspection." Immigration Act of 1917, Pub. L. No. 64-301, § 19, 39 Stat. 874, 889. The Act also required the deportation of any alien who, "within five years after entry," was "found in violation of this Act, or in violation of any other law of the United States." *Id*. In 1929, however, Congress revised the "enter without inspection" language to "elude[] examination or inspection by immigration officials." Act of Mar. 4, 1929, Pub. L. No. 70-1018, § 2, 45 Stat. 1551, 1551. (Congress also subjected aliens who violated that provision to criminal sanctions). This statutory history therefore suggests that Congress expanded the scope of the inspection offense beyond the mere point of entry. *See, e.g., Snyder v. United States*, 603 U.S. 1, 12 (2024) (using "statutory history" to "reinforce[]" the Court's "textual analysis"); *Niz-Chavez v. Garland*, 593 U.S. 155, 168 (2021). Congress had no need to use the word "found" in this provision to distinguish the eluding-inspection offense from an offense that occurs only during entry—its deletion of the word "enter," and insertion of the word "elude" did just that.

Moreover, the strongest negative implication to derive from section 1326 is that "entry" is not a continuing offense, or else Congress would not have needed to use the word "found" in section 1326. But it does not follow that none of the offenses described in section 1325(a) are continuing, especially because the verb "eludes" is best understood to create an ongoing offense.

14

And the negative implication could cut the other way. If Congress uses "entry" to connote a non-continuing offense, it could have said that "elud[ing] examination or inspection by immigration officers *upon entry*" would be a criminal offense. As the district court in *Oca, supra*, concluded, the fact that Congress did not cabin section 1325(a)(2) to entry, when the other two provisions of section 1325(a) refer explicitly to entering the United States, supports an interpretation of the eluding-inspection offense as continuing. 2019 WL 3536823, at *4.

In addition to section 1326(a), there are numerous other continuing offenses found in nearby sections of Title 8, including section 1324a(a)(2), which makes it a crime to "continue to employ" an alien, and section 1324(a)(1)(A)(iii), which makes it a crime to "harbor[], or shield[] from detection" an unauthorized alien. These provisions, which both precede and follow section 1325, are continuing in nature and suggest that Congress believes that immigration crimes are generally of a "continuing" nature," unless Congress uses clear language to the contrary. *Bailey*, 444 U.S. at 413.

Reading section 1325(a)(2) as a continuing offense also finds support in 8 U.S.C. § 1225, which pertains, in part, to "[i]nspection by immigration officers." *United States v. Corrales-Vazquez*, 931 F.3d 944, 947 & n.3 (9th Cir. 2019) (noting that the term "inspection" in section 1325(a)(2) "refers to background screening, searches, and other prerequisites for admission" (citing 8 U.S.C. § 1225(a)(3), (d)). Section 1225 details whom immigration officers inspect, and when. If immigration officers have an ongoing duty to inspect illegal aliens, it stands to reason that an illegal alien may continuously elude inspection, even after the specific moment at which he enters the country. On this, section 1225(a) is clear: Any "alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of

arrival…) shall be deemed an applicant for admission." 8 U.S.C. § 1225(a)(l). And "[a]ll aliens who are applicants for admission … shall be inspected by immigration officers." *Id* § 1225(a)(3).

Other subsections of section 1225 reinforce this conclusion. Subsection (b)(l), for instance, governs the "[i]nspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled." *Id* § 1225(b)(l). The duty to inspect aliens thus applies beyond the context of arrival. As the Ninth Circuit has explained, the language of section 1225 belies a distinction "between aliens at ports-of-entry and those encountered elsewhere in the United States," *United States v. Gambino-Ruiz*, 91 F.4th 981, 986 n.3 (9th Cir. 2024), and "a single inspection procedure applies to 'aliens arriving in the United States and certain other aliens who have not been admitted or paroled,'" *id* at 988 n.5 (emphasis omitted) (quoting 8 U.S.C. § 1225(b)(l)).

The Fifth Circuit recently reaffirmed this proposition. In section 1225(a)(1), "Congress provided for the inspection by immigration authorities of aliens present in the country together with aliens arriving at the border … Following passage of the [Illegal Immigration Reform and Immigrant Responsibility Act of 1996], then, an alien's status as an applicant for admission does not turn on where or how the alien entered the United States." *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 499 (5th Cir. 2026). "Presence without admission deems the petitioners to be applicants for admission." *Id.* at 502.

Likewise, the duty for aliens to submit to inspection is continuing. An alien who refuses to submit to the inspections required by section 1225 is subject to various consequences. Some are civil. *See, e.g.*, 8 U.S.C. § 1182(a)(6)(A)(i) (making such aliens "inadmissible"); *id* § 1227(a)(l) ("inadmissible" aliens are "deportable"). One sanction is criminal, as described in section 1325(a)(2): any alien who "eludes" the immigration officers' section 1225-mandated inspection

16

faces fines or up to six months in prison. And because section 1225 is clear that the duty to inspect is ongoing, so is the duty to submit to inspection. *See Jones v. Hendrix*, 599 U.S. 465, 478 (2023) ("Basic principles of statutory interpretation require" construing statutory provisions "in harmony").

Immigration officers inspect aliens to determine, among other things, if they are inadmissible or have a credible fear of persecution sufficient to justify further investigation. *See* 8 U.S.C. § 1225(b)(l). That determination must be made for an alien "applicant[] for admission" regardless of where the alien is found or where the immigration officer conducts the inspection. *Id*. § 1225(a)(l), (a)(3), (b)(l)(A)(i). Here, such was done when Tenecela-Aguaiza was questioned during standard immigration processing at the Ogdensburg Border Patrol station after he was caught. Section 1325(a)(2) sanctions illegal aliens for "elud[ing]" these inspections. It would make no sense to impose a criminal sanction on an alien who "eludes" that necessary inspection at a port of entry while sparing another alien, whom immigration officials are just as responsible for inspecting, of that same sanction merely because he "eludes" his inspection elsewhere.

An alien might be able to terminate the continuing offense by fulfilling the statutory duty to submit to an inspection sometime after entry. Immigration regulations currently list hundreds of designated Class A port of entry facilities throughout the country. *See* 8 C.F.R. § 100.4(a) ("Class A means that the port is a designated Port-of-Entry for all aliens."). Not all these facilities are at the border. There are designated facilities in Des Moines, Iowa; Omaha, Nebraska; Billings, Montana; Reno, Nevada; Columbus, Ohio; and Charleston, West Virginia, for example.[4] To the extent that voluntarily submitting to an immigration inspection after illegal entry may have civil

---

[4] There was a third alien with Tenecela-Aguaiza and Espinoza-Cabrera on November 1, 2025, who had illegally entered the United States but who had previously been encountered and processed by Border Patrol. He was not criminally charged in this matter.

or criminal consequences for an alien, such as removal or prosecution, those are exactly the consequences an alien seeks to avoid by continually eluding said inspection.

To be sure, the Supreme Court has admonished that "the doctrine of continuing offenses should be applied in only limited circumstances" because such offenses extend the statute of limitations. *Toussie v. United States*, 397 U.S. 112, 115 (1970). As an initial matter, it is not clear that the presumption against continuing offenses applies here because "the 'continuing offense' analysis for venue purposes is 'obviously different' from the 'continuing offense' analysis for statute of limitations." *United States v. Reitmeyer*, 356 F.3d 1313, 1323 (10th Cir. 2004) (citation omitted); *see also id*. ("An offense may begin, continue, or end in different locations without qualifying as a 'continuing offense' for statute of limitations purposes" (citation omitted)). As the Second Circuit has recognized, "[r]ules governing venue and limitations serve distinct purposes." *United States v. Tannenbaum*, 934 F.2d 8, 13 (2d Cir. 1991). Venue is relevant only to where a defendant may be charged—not when. *Toussie* itself emphasized this difference, distinguishing "other instances in which th[e] Court has held that a particular statute describes a continuing offense" as "cases deal[ing] with venue" and "not involv[ing] the statute of limitations." *Id*. at 120–21 & n.16. It is not surprising, then, that the Supreme Court has not applied the *Toussie* presumption to continuing-offense cases about venue. *See, e.g., United States v. Rodriguez-Moreno*, 526 U.S. 275, 281-82 (1999).

In any event, the *Toussie* presumption does not apply when "the explicit language of the substantive criminal statute compels such a conclusion, or the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one." 397 U.S. at 115; *see, e.g., United States v. Pontz*, 132 F.4th 10, 25 (1st Cir. 2025) (either "statutory language" or "congressional intent" can overcome the presumption); *Bailey*, 444 U.S. at 413. Here, the plain

18

meaning of "elude" as encompassing ongoing conduct compels the conclusion that section 1325(a)(2) is a continuing offense. *See Cuadra Soto,* 2026 WL 123220, at *4 ("[a] person may…continuously elude an ongoing obligation (i.e., to escape discovery or to remain undiscovered)").

Likewise, the nature of a section 1325(a)(2) offense establishes that Congress intended it to be a continuing one. Just as a prisoner who "escapes" prison commits a continuing offense in part because the crime is one that "by its nature" presents a "continuing threat to society," *Bailey*, 444 U.S. at 413 (analyzing 18 U.S.C. § 75l(a)), evading inspection presents such a continuing threat. Immigration officials inspect aliens to discover whether (among other things) those aliens have or will seek to engage in "terrorist activity," "espionage," "sabotage," efforts to "overthrow" the U.S. government by force, the theft of sensitive information or technology, or "any other unlawful activity." *Id.* §§ 1182(a)(3), 1225(c)(l). They also check whether aliens are criminals, traffickers, or carriers of a "communicable disease." *Id.* § 1182(a)(l), (2). Such aliens are statutorily inadmissible because their past, present, or planned conduct shows that they would put American communities in harm's way. If they enter the United States illegally and then evade inspection for such attributes in the years that follow, they represent a "continuing" threat to the American people. *Bailey*, 444 U.S. at 413.

Finally, the interpretative canon of constitutional avoidance weighs in favor of interpreting section 1325(a)(2) as a continuing offense. As the Supreme Court has explained, this interpretative canon "is a tool for choosing between competing plausible interpretations of a statutory text." *Clark v. Martinez*, 543 U.S. 371, 381 (2005). The modern version of this canon teaches that when one plausible interpretation raises "serious constitutional doubts," Congress likely intended the text to reflect the other plausible interpretation. *Id.* The traditional version of this canon is even

19

stricter and provides that courts must choose the interpretation of statutory text that renders it constitutional, because "a presumption never ought to be indulged, that [C]ongress meant to exercise or usurp any unconstitutional authority, unless that conclusion is forced upon the Court by language altogether unambiguous." *United States v. Coombs*, 37 U.S. (12 Pet.) 72, 76 (1838). Here, both versions of the canon support interpreting section 1325(a)(2) as a continuing offense.

When Congress enacted section 1325(a)(2), it also enacted a venue provision, 8 U.S.C. § 1329, which states that "[n]otwithstanding any other law, such prosecutions or suits may be instituted at any place in the United States at which the violation may occur or at which the person charged with a violation under section 1325 or 1326 of this title may be apprehended." This provision would be rendered entirely "unconstitutional" for all of section 1325(a) if none of the crimes falling within that subsection are "continuing" because it would allow prosecutors to charge an alien in a venue other than that in which he entered the country and first eluded inspection. The canon of constitutional avoidance thus counsels that Congress did not intend for section 1325(a)(2)—the section 1325(a) crime most likely to be a continuing offense—to be interpreted as a non-continuing offense such that the part of section 1329 governing section 1325 is unconstitutional.

Tenecela-Aguaiza's counterargument is unavailing. He contends that "reading § 1329 to its further interpretive possibilities" would mean that Congress authorized venue for "every §§ 1325 and 1326 offense, not just 1325(a)(2)," and this would create constitutional problems where the underlying offense is non-continuing. Def. Mem. at 19. But section 1329 does not *require* venue to lie in the district of apprehension for *each* section 1325 and section 1326 offense. Rather, section 1329 recognizes that venue "may" (not "shall") lie in the district court where a person "charged with a violation under section 1325 or 1326" is apprehended. In other words,

section 1329 permits venue in the district of apprehension for those offenses under sections 1325 and 1326 that continue beyond the place of their initial occurrence, including section 1325(a)(2). Importantly, Tenecela-Aguaiza asserts that *none* of the offenses under section 1325 are continuing offenses, including section 1325(a)(2). Def. Mem. at 19. But it is only under *that* reading of section 1325 that a constitutional problem arises, because it is only then that Congress can be understood to have authorized prosecutions that necessarily violate the venue clause of Article III by including all of section 1325 within the scope of section 1329's apprehension provision.[5]

Admittedly, in *United States v. Davis*, 588 U.S. 445 (2019), the Supreme Court expressed "doubt" that the avoidance canon can be used "to *expand* the reach of a criminal statute in order to save it." *Id*. at 463. But the Court's skepticism reflected the fact that the government's expansive interpretation of the statute there would subject criminals to "additional punishment" for conduct that the penalty provisions had "not previously been understood to reach." *Id*. at 463-64. This, the Court suggested, would "sit uneasily with the rule of lenity's teaching that ambiguities about the breadth of a criminal statute should be resolved in the defendant's favor." *Id*. at 464. *Davis*'s lenity rationale is not readily applicable here. That is because "the rule of lenity is typically invoked only when interpreting the substantive scope of a criminal statute or the severity of penalties that attach to a conviction—not the venue for prosecuting the offense." *United States v. Canal Barge Co.*, 631 F.3d 347, 353 (6th Cir. 2011). Unlike in *Davis*, reading section 1325(a)(2) as a continuing offense would not subject those who elude inspection to "additional punishment" for conduct that

---

[5] Tenecela-Aguaiza's suggestion (Def. Mem. at 20) that section 1329's apprehension provision refers only to offenses committed in a U.S. territory is purely speculative. If Congress had wanted to limit the "apprehension" prong to such offenses, it easily could have specified such a limitation in section 1329, but it did not do so. And Tenecela-Aguaiza points to nothing in the statutory history or legislative record to suggest that Congress was concerned with territorial immigration offenses when it promulgated section 1329.

the statute had "not previously been understood to reach." 588 U.S. at 463, 464. Instead, the same offense that someone might commit at the border—eluding inspection—simply continues, such that venue is proper in districts other than those at the border. Nor does the government's interpretation of section 1325(a)(2) subject those who elude inspection to greater punishment. And in any event, as the Supreme Court has repeatedly reiterated since *Davis*, the rule of lenity "applies only if after seizing everything from which aid can be derived"—such as substantive canons like constitutional avoidance—"there remains grievous ambiguity." *Pugin v. Garland*, 599 U.S. 600, 610 (2023) (internal quotation marks and citation omitted); *see, e.g., Pulsifer v. United States*, 601 U.S. 124, 152–53 (2024) (declining to apply the rule of lenity because the traditional tools of statutory interpretation reduced "two grammatically permissible readings of the statute" to "one"); *Brown v. United States*, 602 U.S. 101, 122 (2024) (lenity not applicable where "context, precedent, and statutory design adequately show 'what Congress intended'"). Because the avoidance canon helps confirm the government's semantic reading of the statute, there is no sound basis for turning to the rule of lenity. Accordingly, Tenecela-Aguaiza's prosecution is proper in the Northern District of New York.

In support of his appeal, Tenecela-Aguaiza cites the Fourth Circuit's unpublished opinion in *United States v. Cavillo-Rojas*, 510 F. App'x 238, 248 (4th Cir. 2013).  That case is inapposite. In *Cavillo-Rojas*, the government brought a "[section] 1325(a) charge" without distinguishing between illegal entry under section 1325(a)(l) and eluding examination or inspection under section 1325(a)(2). The argument germane to the continuing offense question was explained only in relation to a count charging the defendant "with illegally entering the United States" as one would do in violation of section 1325(a)(*1*). *Id.* The court's decision focused on the word "enter" in

section 1325(a)(l) and juxtaposed that verb with the language in section 1326; it did not separately consider section 1325(a)(2)'s use of the verb "elude." *See id.*

Tenecela-Aguaiza also relies on *United States v. Corrales-Vazquez*, a case where the Ninth Circuit held that section 1325(a)(2) violations can be committed only "where and when examinations or inspections take place- at open ports of entry." 931 F.3d 944, 948 (9th Cir. 2019). *Corrales-Vazquez* stands alone as no other Circuit Court or District Court has issued such a holding limiting the application of section 1325(a)(2) to ports of entry. Indeed, this District has adjudicated hundreds of 1325(a)(2) convictions for illegally entering the United States at places other than a port of entry. *See, e.g.*, *United States v. Brunot*, 8:25-po-111 (GLF). Other district courts in the Second Circuit have done so as well. *See, e.g.*, *Dorval v. Barr*, 414 F. Supp. 3d 386, 387 (W.D.N.Y. 2019) (Haitian defendant who was wet from the knees down and did not have documents allowing him to be present in the United States when arrested in the vicinity of Champlain, New York, subsequently pled guilty to violating 8 U.S.C. § 1325(a)(2)).

*Corrales-Vazquez's* holding also flies in the face of the plain meaning of "elude," ("[t]o avoid slyly or adroitly, as by artifice, stratagem, or dexterity; to evade; … [t]o escape the notice or perception of."). One may "elude" an examination or inspection where such examinations or inspections occur, like an open port of entry, or one may elude an examination or inspection by avoiding the location at which such examinations and inspections occur. The effect is the same. It would make no sense to criminalize one and not the other.

Reading section 1325(a)(2) as a continuing offense does not subsume section 1325(a)(1) as Tenecela-Aguaiza would have the Court believe. To sustain a conviction for section 1325(a)(1), "the Government must prove that the defendant 1) is an alien; 2) who knowingly entered the United States at any time or place other than as designated by immigration officers." *United States*

*v. Sajous,* 2025 WL 2097261, at *8 (District of the Virgin Islands, July 25, 2025). Implicit in section 1325(a)(1) is the requirement the government prove the time and place of entry. *See United States v. Chang-Rodriguez,* 2020 WL 3542302, at *3 (D.N.M. June 30, 2020) (the Magistrate Judge found that Defendant crossed the international boundary from Mexico into New Mexico at a place that is not a designated port of entry based on agent's observations of three people moving north toward the border and testimony and photographs showing shoe prints east of the boundary fence and going north to the area of apprehension matched Defendant's shoes). Section 1325(a)(2) has no such requirement. In cases where an alien has illegally entered the United States, but the time and place cannot be determined, they have eluded examination and inspection. Accordingly, there is a fundamental difference between sections 1325(a)(1) and (a)(2) where (a)(2) is violated at a place other than an open port of entry.

In sum, section 1325(a)(2) sets forth a continuing offense and section 1329 provides that venue lies where an alien is apprehended.

**POINT II:    The Trial Evidence Was Sufficient.**

**A.  Governing Law and Standard of Review**

Federal law criminalizes "elud[ing] examination or inspection by immigration officers." 8 U.S.C. § 1325(a)(2). To support a conviction for section 1325(a)(2), the government must prove that "Defendant (1) was an alien and (2) evaded or eluded inspection." *Oca*, 2019 WL 3536823, at *4. An alien is a person who is not a natural-born or naturalized citizen or a national of the United States. *See* 8 U.S.C. § 1101(a)(3).

Courts review preserved claims of insufficient evidence *de novo*. *United States v. Capers,* 20 F.4th 105, 113 (2d Cir. 2021). Even under *de novo* review, however, a defendant challenging the sufficiency of the evidence at trial bears "a very heavy burden," *see United States v. Gonzalez,* 110 F.3d 936, 940 (2d Cir. 1997), because the Court must uphold the verdict so long as "*any*

rational tier of fact could have found the essential elements of the crime beyond a reasonable doubt," *Jackson v. Virginia,* 443 U.S. 307, 319 (1979) (emphasis in original). On appeal, "a court may enter a judgment of acquittal only if the evidence that the defendant committed the crime alleged is nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt." *United States v. Atilla*, 966 F.3d 118, 128 (2d Cir. 2020).

"[S]ufficiency of the evidence as to venue" is reviewed "in the light most favorable to the government, crediting 'every inference that could have been drawn in its favor,'" *United States v. Tzolov,* 642 F.3d 314, 318 (2d Cir. 2011) and the Court defers to the fact-finder's assessment of the weight of the evidence. *United States v. Jabar*, 19 F.4th 66, 76 (2d Cir. 2021). It is not the Government's burden to "disprove every possible hypothesis of innocence," *United States v. Abelis,* 146 F.3d 73, 80 (2d Cir. 1998), because "the task of choosing among competing, permissible inferences is for the fact-finder, not for the reviewing court," *United States v. McDermott*, 245 F.3d 133, 137 (2d Cir. 2001). On appeal, this Court "must analyze the evidence in conjunction, not in isolation, and apply the sufficiency test to the totality of the government's case and not to each element, as each fact may gain color from others." *Atilla*, 966 F.3d at 128. "These standards apply whether the evidence being reviewed is direct or circumstantial." *United States v. Persico*, 645 F.3d 85, 105 (2d Cir. 2011).

**B. Discussion**

Based on the trial evidence, a reasonable factfinder could conclude that Tenecela-Aguaiza is an alien who eluded examination and inspection. The stipulated facts established that Tenecela-Aguaiza is an alien and citizen of Ecuador. A:56. Tenecela-Aguaiza admitted to Border Patrol that he unlawfully entered the United States in 2021 and was not inspected or admitted by an

immigration officer. *Id.* Records confirmed he has no record of legal entry into the United States and no record of having been previously inspected or examined by immigration officials. *Id.*

Tenecela-Aguaiza's first argument on this point rests on the mistaken proposition that eluding examination or inspection can only occur at an open port of entry. For the reasons stated above, this argument should be rejected.

Tenecela-Aguaiza's second argument, that there is no evidence he knowingly eluded examination or inspection when he entered the United States, is groundless. Tenecela-Aguaiza seeks to shift the focus of his eluding examination or inspection to his entry in Texas. But he was convicted of eluding examination and inspection in the Northern District of New York. The evidence of Tenecela-Aguaiza's illegal entry in Texas, that he purports is insufficient to sustain a conviction in the Northern District of New York, simply established that he originally illegally entered the United States. He thereafter *continued* to elude examination or inspection, including in the Northern District of New York.

Tenecela-Aguaiza also incorrectly claims that a violation of section 1325(a)(2) requires more than failing to submit to an examination. But all that is required is that an alien elude examination or inspection. *See Oca*, 2019 WL 3536823, at *4. "[T]he factfinder can draw inferences about a defendant's intent based on all the facts and circumstances of a crime's commission." *Rosemond v. United States*, 572 U.S. 65, 78 n.9 (2014). Tenecela-Aguaiza admitted he entered the United States illegally in 2021 and had not been inspected by immigration authorities upon his entry or since. Immigration record checks confirmed this. This admission and records, combined with the amount of time Tenecela-Aguaiza has spent illegally in the United States, evinces he knowingly eluded examination and inspection when he entered the United States and has since. *See United States v. Montes-De Oco*, 820 F. App'x 247, 252 (5th Cir. 2020)

(evidence sufficient to sustain a conviction for knowingly eluding examination when defendant crossed the barrier into the northbound lane, walked north against traffic, ignored signs in English and Spanish that directed her to the inspection station, and offered varying explanations for her actions).

Tenecela-Aguaiza's third argument, that he submitted to an immigration inspection on November 1, 2025, should be rejected. He only acquiesced to an immigration inspection after he was caught by Border Patrol. Tenecela-Aguaiza's assertion is akin to an escapee arguing that once caught, he was no longer escaping. As is clear from the trial stipulation, Tenecela-Aguaiza had no contact with federal officials for any immigration-related purpose between his illegal entry in 2021 and his encounter with Border Patrol on November 1, 2025, a period of time during which he continually eluded examination or inspection.

## VI. CONCLUSION

The judgment of conviction should be *affirmed* in all respects.


Dated: March 23, 2026                    Respectfully submitted,

                                         TODD BLANCHE
                                         Deputy Attorney General

                                         JOHN A. SARCONE III
                                         First Assistant United States Attorney

                            By:      */s/ Douglas G. Collyer*
                                         Douglas G. Collyer
                                         Assistant United States Attorney
                                         Bar Roll No. 519096

27

**Certificate of Service**

I, Douglas G. Collyer, hereby certify that I served a copy of this notice on defense counsel by electronic filing, via ECF.

March 23, 2026                                   */s/ Douglas G. Collyer*
                                                Douglas G. Collyer